STOKER, Judge.
This is tort action based on a collision between a pickup truck and a farm tractor which was pulling two farm implements. The appeal arises out of the trial court’s granting of a JNOV in favor of the plaintiff-driver of the pickup truck after the jury had determined that the defendant- *88 driver of the farm tractor was not at fault in the collision.
Lloyd Anthony Guillory, the driver of the pickup truck, filed suit against Calvin Brent Spears, the driver of the farm tractor. Michael Fontenot owned the pickup truck and Robert Spears, Brent Spears’s father, owned the farm tractor involved in the collision. In addition to Brent Spears, Guillory named as a defendant Louisiana Farm Bureau Casualty Insurance Company, who had issued a “Farmer’s Comprehensive Personal Liability Policy” to Robert Spears.
The case was tried by a twelve member jury which returned the following verdict:
“SPECIAL JURY INTERROGATORIES
1. Do you find that Calvin Brent Spears was at fault, which fault was a legal cause of the accident:
YES_NO X ”
Guillory subsequently filed a Motion for Judgment Notwithstanding the Verdict. The trial court granted Guillory’s motion, and awarded Guillory $200,000 in general damages and loss of wages, $33,000 in medicals, and allocated 50% fault to Guillo-ry and 50% fault to Spears.
Spears and Louisiana Farm Bureau Casualty Insurance Company appealed alleging several errors in the trial court’s ruling. Guillory answered the appeal, although he did not submit a brief, alleging two errors in the trial court’s ruling. Finding that the trial court erred in granting the JNOV in favor of Guillory, we pretermit addressing the other errors assigned by the parties to this appeal. We reverse the trial court and reinstate the jury’s verdict.
BACKGROUND
Guillory contended that Spears was liable for damages because Spears was in violation of LSA-R.S. 32:385 at the time of the accident and because one of the farm implements had traversed the centerline into Guillory’s lane of travel at the time of the accident. Briefly, LSA-R.S. 32:385 grants certain farm vehicles and equipment the right to use public highways from thirty minutes after sunrise through thirty minutes before sunset provided that certain conditions are met. Against this background, we set forth the following facts.
FACTS
On the evening of May 31, 1988, Guillory was travelling eastbound on Louisiana Highway 376 (Bond Road) at approximately fifty-five miles per hour in a pickup truck. Guillory stated that he had consumed two beers and had opened a third prior to getting on the highway. Spears had just turned onto the highway off of a field, attempting to get to another field a quarter of a mile down the road. Spears was travelling at approximately six to seven miles per hour in a tractor with two of his children. The tractor was pulling a culti-packer and a drill.
As the two vehicles approached each other, Guillory began veering into Spears’s lane. Spears testified that Guillory hit the dual wheel of the tractor, twisted in the road, and started moving sideways, eventually hitting the culti-packer. The first point of impact occurred ten inches inside of Spears’s lane; the location to the second point of impact was disputed at trial. Guil-lory maintained that the culti-packer had crossed the centerline into Guillory’s lane of travel, while Spears testified that he did not know whether the implements were across the centerline at the time of accident, but he did not think they were. Officer Joseph Carriere testified that he was unable to determine the location of the second point of impact, but was of the opinion that it occurred at the centerline. Spears had moved the tractor prior to Officer Carriere’s arrival to avoid blocking traffic.
The evidence showed that the tractor was twelve feet and six inches wide, while the culti-packer was fifteen feet and eight inches wide. Each lane of travel was eight and one-half feet wide. Concerning the width of the shoulder, photographs of the accident scene show a pickup truck parked on the shoulder with adequate room.
The time of the accident was in dispute. Guillory testified that the accident occurred *89 at 8:30 p.m. while Officer Joseph Carriere estimated that the accident occurred at 8:15 p.m. Meteorologist Richard Faurot testified that sunset occurred at 8:07 p.m. on May 31, 1988, and that civil twilight occurred at 8:33 p.m. Faurot stated that the weather was clear at sunset. Spears, as well as several others who arrived at the scene shortly after the accident, testified that it was still daylight at that time; Guil-lory, and several others who also arrived at the scene shortly after the accident, testified that it was dark at that time.
In any event, Guillory had his lights on prior to the accident. Spears testified that he turned the tractor lights on prior to leaving the field in order to make sure that motorists could see him. Guillory testified that Spears did not turn the tractor lights on until thirty-six feet before impact. Guil-lory testified that he was unable to see Spears until he was one hundred and fifty feet away from him, the length of his headlight beams. In deposition, however, Guil-lory stated that he was able to see three hundred to four hundred yards ahead of him. He explained this discrepancy by stating that he was able to see three hundred to four hundred yards when he was travelling to his brother’s trailer, which was approximately 7:30 p.m.
The accident was not reported until 9:10 p.m. Guillory testified that Brent and Robert Spears advised him not to call the police because Guillory did not have a driver’s license. Spears testified that Guillory asked him not to call the police because Guillory said he had been drinking and for “another reason.”
Officer Carriere testified that he arrived at the scene at 9:19 p.m. and that Guillory appeared intoxicated when he arrived. Officer Carriere administered a breath analysis test at 10:43 p.m. which yielded a reading of .095. Guillory testified that he did not consume any alcohol after the collision. Officer Carriere observed thirty-six feet of skid marks beginning in Guillory’s lane and extending ten inches into Spear’s lane. He was of the opinion that Guillory was already at an angle before hitting his brakes because Guillory skidded straight into Spear’s lane. Dr. Olin Dart, Guillory's own reconstruction expert, was also of the opinion that Guillory was already at an angle before hitting the brakes.
OPINION
The jury returned a verdict in favor of Spears, and Guillory filed a motion for a JNOV. The trial court granted the motion, giving the following oral reasons:
“Alright. The Court will declare a Judgment NOV. I feel very strongly that both sides in this case are wrong. I think that the jury just went haywire and they let reputation and character assassination col- or the whole situation up. No question in my mind that Spears was in the other man’s lane at the time of the accident. No question he was in violation of the law by being on the road before sundown. But also I find that the plaintiff here did have impairment, and he contributed heavily towards this accident. I’m not impressed as you are, Mr. Deshotels, about the amount of damages ... I’m going to assess the respective negligence on a 50/50 basis. I believe that the plaintiff was somewhat impaired, but if that big tractor would not have gotten on the road at that time that this accident would not have occurred even though he would have been dead drunk, because he’s just not supposed to be on the road. It was a legal cause of that accident. 50/50. And also that he was across the road, causing an emergency which may have caused the man to veer to the left in the emergency not having time of cool reflection. I think the jury — I really believe that jury was prejudiced against that plaintiff because he had a few drinks. I really believe that they were prejudiced against Blake because Blake was out there kind of running that case. And that’s not an issue in this case. Its not an issue that Blake was down there at the time of the accident and trying to help his friend and so forth. It may be ugly. It may have looked bad. And that’s what I think that jury did. I think they went haywire on reputation of Blake being out there and taking charge of it and the plaintiff drinking his booze and so forth. But honestly I believe that that *90 tractor — would have come during the daytime, not in violation of the law, this accident wouldn’t have happened. I'm going to hold that the general damages and the loss of wages would be Two Hundred Thousand ($200,000.00) Dollars and Thirty Three Thousand ($33,000.00) Dollars would be for his medical and you’d have to make a judgment on fifty percent. Cost of all the proceedings is cast against the defendants in this case. Interest from date of judicial demand on the 50% percent.”
In Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La.App. 3d Cir.), writ denied, 437 So.2d 1149 (La.1983), we set forth the standard of proof applicable for motions for JNOV under LSA-C.C.P. art. 1811. We stated:
“We conclude that the standard for determining the propriety of granting a judgment notwithstanding the verdict is the same as used to determine whether a directed verdict should be granted. Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969); Lubbock Feed Lots, Inc. v. Iowa Beef Processors, 630 F.2d 250 (5th Cir.1980); Wright and Miller, Federal Practice and Procedure, Volume 9, sec. 2537, page 599.
“In the present case the trial judge correctly adopted the standard to be applied in deciding whether a motion for judgment notwithstanding the verdict should be granted. The court’s written reasons reflect' its rationale:
“ ‘Louisiana courts adopted the standard for ruling on a motion for a directed verdict applied by the Federal courts. That standard was enunciated by the Third Circuit in Campbell v. Mouton, 373 So.2d 237 (La.1979), which quoted the following language of the U.S. Fifth Circuit Court of Appeal in Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969):
“ ‘ “On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s case— but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.” ’ ” Rougeau at p. 1166.
In Alumbaugh v. Montgomery Ward & Company, Inc., 492 So.2d 545 (La.App. 3d Cir.), writ denied, 495 So.2d 304 (La.1986), we summarized this standard of proof by stating:
“We understand the standard as set out in Rougeau to mean that a motion for a judgment notwithstanding the verdict can only be granted by the district judge when, without weighing the credibility of the evidence or the witnesses, there cannot be but one reasonable conclusion as to the correct and proper judg-' ment. Where there is such evidence upon which reasonable men might render a verdict in favor of the non-moving party, or where there is conflicting evidence, a judgment notwithstanding the verdict should not be awarded.” Alumbaugh at p. 548.
At the hearing on the motion for JNOV, Guillory’s counsel argued that the jury’s verdict was erroneous because the jury “disregarded the undisputed proof that Mr. Spears was driving this tractor when Louisiana Law under Title 32:385 prohibited any farm equipment from being [on the highway].” Guillory’s counsel also argued that the jury erred because it “disregarded the undisputed fact that ... the implement which was travelling behind the tractor ... was traversing Mr. Guillory’s lane at least two feet in its front corner and more to its back corner.” Even assuming LSA-R.S. 32:385 is applicable to the case at hand or that the culti-paeker did traverse Guillory’s lane (this issue was in fact disputed at trial), proof of this does not render Spears liable per se. It is well *91 settled that in order for the violation of a safety statute to constitute actionable negligence, the violation must be encompassed within the scope of the risks that the statute was designed to protect against, and the violation must be a cause-in-fact of the accident. Loveday v. Travelers Insurance Company, 585 So.2d 597 (La.App. 3d Cir.), writ denied 590 So.2d 65 (La.1991).
LSA-R.S. 32:385 provided at the time of the accident that:
“Farm vehicles and equipment, except draglines and bulldozers being operated and/or transported for bona fide agricultural purposes or the transportation of farm vehicles and equipment to be used for normal farm purposes by persons transporting such farm equipment or machinery for distances not to exceed fifty miles from the point of origin shall be exempt from the requirements of R.S. 32:380 through R.S. 32:382 and additionally farm equipment shall be exempt from the requirements of R.S. 32:384.
Such farm vehicles may use any public highways other than those designated as part of the national system of interstate and defense highways during the period from thirty minutes after sunrise until thirty minutes before sunset without obtaining a special permit from the secretary, as provided in R.S. 32:387, or from any other agency or department of the state or political subdivisions, provided that such machinery or equipment being shipped by persons to be used for normal farm purposes shall be equipped with front and rear reflector lights and with a blinking hazard light clearly visible from the front and rear.” (emphasis added)
An apparent purpose for restricting the use of public highways by farm vehicles and equipment to periods of daylight was to ensure that motorists encountering these often slow moving and oversized vehicles and equipment would be able to see them in sufficient time to react safely to them. The jury could have accepted testimony that the accident occurred before dark, that visibility was still high, and that Spears had turned on the tractor’s lights before entering the road way. The tractor had two headlights, two yellow blinking lights on the top of the cab, one light on the back of the cab shining on the implements, and two additional blinking lights.
The jury could have reasonably concluded that the tractor and implements were visible such that the accident was not caused by a violation of the statute, but because Guillory was intoxicated to the extent that his perception and functioning were impaired. The record in fact reveals that Guillory initially traversed Spears’s lane, colliding with the tractor ten inches inside of Spears’s lane.
We also find that the jury could have reasonably concluded that if the culti-packer had traversed Guillory’s lane of travel, this encroachment was not a legal cause of the accident. The evidence reveals that each lane of travel was eight and one-half feet wide. Both lanes had a shoulder. The jury could have reasonably concluded that Guillory could have maneuvered to his right and avoided the tractor and implements altogether.
Additionally, in Manuel v. Louisiana Farm Bureau Casualty Insurance Company, 563 So.2d 916 (La.App. 3d Cir.1990) this court upheld a jury verdict finding the plaintiff-automobile driver 100% at fault in a collision with a farm tractor. In that case, the plaintiff-automobile driver was in her own lane of travel when the farm tractor, which had traversed the centerline into the plaintiff’s lane by at least one and one-half feet, collided with the plaintiff’s automobile. The trial court denied motions for JNOV and a new trial. We affirmed on appeal.
In Manuel, the plaintiff and defendant were travelling in opposite directions. As the plaintiff came around a long curve, she met the farm tractor pulling a disc plow. The tractor was twelve feet and six inches wide, while the plaintiff’s automobile was six feet wide. Each lane of travel was ten feet wide. The plaintiff was travelling at a speed of forty to fifty miles per hour, and the defendant was travelling at a speed of ten miles per hour. The accident occurred at 1:30 p.m.
The only major distinction between Manuel and the case at hand is that the *92 tractor in Manuel was operated in compliance with LSA-R.S. 32:385, regarding the time of operation. Accordingly, this court explained that because the conditions of LSA-R.S. 32:385 had been met by the driver of the tractor, the case presented nothing different than an accident involving two vehicles which both had a legal right to be on the highway, where one was alleged to have been operated negligently. As noted above, the jury could have reasonable concluded that Spears’s violation of LSA-R.S. 32:385 was inconsequential in the collision. Therefore, as in Manuel, the jury could have reasonable concluded that Spears was not at fault in causing the collision, even though the culti-packer may have traversed the centerline into Guillo-ry’s lane of travel.
DISPOSITION
We conclude that the facts do not point so strongly and overwhelmingly in favor of Guillory that reasonable jurors could not have decided in favor of Spears. Accordingly, we reverse the trial court’s granting of the JNOV and reinstate the jury’s verdict. Costs of this appeal and the costs incurred in the trial court are to be paid by the plaintiff.
REVERSED and RENDERED.